**George J. BECKETT, Jr.**

v.

**Julius T. CUYLER.**

**Civ. A. No. 81–1044.**

United States District Court,
E. D. Pennsylvania.

Aug. 12, 1981.

As Amended Aug. 24, 1981.

George J. Beckett, Jr., pro se.

Marc G. Brecher, Deputy Atty. Gen., Philadelphia, Pa., for defendant.

### MEMORANDUM

CAHN, District Judge.

Plaintiff, a prisoner, brought this pro se action under 42 U.S.C. § 1983, alleging unconstitutional deprivation of his right to work release. For the reasons stated here-

in, defendants' motion to dismiss will be granted.

## I. FACTS

For the purposes of this opinion, the facts alleged by plaintiff are assumed to be true.

In February 1976 plaintiff was convicted of third degree murder in the Court of Common Pleas of Philadelphia County and was sentenced to three to fifteen years in prison. The trial court's order specified that the prison term be served in a work release program. After serving an initial indoctrination period at the State Correctional Institution at Graterford, plaintiff was refused admission to the work release program. Plaintiff contacted the state trial court to obtain entry into the program. Plaintiff eventually obtained his work release privileges, allegedly over the objections of the prison work release supervisor, defendant William Conrad.

During the next four years, defendant prison officials removed plaintiff from the work release program five times for various alleged misconducts. Each time either the prison hearing board or the state trial judge caused plaintiff to be reinstated to the work release program. Beginning in December 1976 plaintiff escaped for six months by not returning from his job, but returned voluntarily.[1] After this escape, prison officials revoked plaintiff's work release privilege. Plaintiff then filed a petition for writ of habeas corpus in state court. As a result, prison officials returned him to the work release program.

In August of 1978, plaintiff filed an action in this court under 42 U.S.C. § 1983 to redress alleged deprivations of constitutional rights in the initial denial and the repeated suspension of his court-mandated work release program. Plaintiff charged that the prison officials had harassed him because he had appealed to the state court to obtain work release and because the state court had intervened on his behalf against their wishes. Plaintiff added a petition for a writ of habeas corpus in this court in February of 1979. The writ was denied for failure to exhaust state remedies, but the suit under § 1983 remained.

In May of 1979, while his suit was pending, plaintiff alleges that other prisoners told him that he would again be "set up" for removal from the work release program. Plaintiff alleges that this is the reason he did not return to the work release camp that night but instead escaped, this time for thirteen months. A year later, on June 17, 1980, this court dismissed plaintiff's first case with prejudice for failure to prosecute. One week later, plaintiff was arrested and returned to prison. Plaintiff was unable to overturn the dismissal of the first case on appeal. He then filed this suit, alleging continuing constitutional deprivations under § 1983, and requesting injunctive relief and compensatory and punitive monetary damages.

On May 11, 1981, plaintiff once again appeared before the state trial judge to protest his removal from the work release program. At that time the deputy superintendent of the State Correctional Institution at Graterford informed the state court that plaintiff could no longer be placed in the work release program because that program was being terminated at Graterford. On July 6, 1981, the state court vacated plaintiff's sentence, and resentenced him to serve two and one-half to five years, the maximum term of which will expire on July 15, 1982. Plaintiff then moved to amend his complaint in this action, asserting the changed circumstances and apparently withdrawing his request for injunctive relief. At any rate, it is clear that plaintiff is no longer entitled to be returned to work release in light of the July 6, 1981, sentence. The claim for monetary damages, both compensatory and punitive, are thus all that remains for this court to decide. I will grant plaintiff's motion to amend his complaint, but will dismiss his complaint.

1. Under 61 Pa.Con.Stat.Ann. § 1053, a prisoner's failure to return from the assigned place of employment is deemed an escape.

## II. *DISCUSSION*

For analytical purposes, I will separate plaintiff's complaint into two periods of time. The first will include all claims up to and through the May 1979 escape, while the second will cover all allegations following plaintiff's return to prison in June 1980.

### A. PRE–ESCAPE CLAIMS

■ Plaintiff's allegations of damages prior to his second escape are identical to those raised in his first suit in this court, except that injunctive relief is no longer requested. I dismissed that first suit with prejudice under Fed.R.Civ.P. 41(b) while plaintiff was an escaped prisoner at large. Such a dismissal operates as an adjudication on the merits under the Rule. Plaintiff's current action is thus barred by the doctrine of res judicata.

■ I will therefore deem plaintiff to have moved to reopen the earlier judgment under Fed.R.Civ.P. 60(b). Under Rule 60(b)(6), the court may order relief from a judgment for "any other reason justifying relief from the operation of the judgment." The original action was properly closed when plaintiff escaped and thereby sacrificed the opportunity to prosecute his claim. Plaintiff clearly chose to pursue his own illegal remedy rather than await judicial resolution of his suit, and such self-help in the form of escape is indefensible. *United States v. Haley*, 417 F.2d 625, 626 (4th Cir. 1969). This rule controls regardless of aggravating conditions at the prison. *United States v. Powell*, 601 F.2d 583 (4th Cir. 1979). Although "an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims." *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970); *cf. Estelle v. Dorrough*, 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377, *reh. denied*, 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975) (escaped prisoner can lose right to appeal). In short, the interests of justice do not favor reopening this matter, and thus I will not grant plaintiff relief from the earlier judgment.[2]

### B. POST–ESCAPE CLAIMS

Plaintiff also demands monetary damages for a continuing deprivation of his alleged constitutional right to work release under the state court work release sentence.[3]

■ Plaintiff's claim for damages after his first escape may have had merit originally, but he now has waived any right to money damages resulting from denial of work release by choosing to escape for thirteen months.[4] This second escape provided ample justification to the defendants for removing plaintiff from the work release program.

■ Even if plaintiff's interest in work release does reach the level of a constitutionally protected liberty interest,[5] that right cannot be absolute. The applicable Pennsylvania law recognizes that prison officials will need to regulate the conduct of prisoners on work release, and specifically provides for removal from the program for violation of these rules. 61 Pa.Con.Stat. Ann. § 1053. It would transcend the bounds of reasonableness to declare that

---

2. Plaintiff filed his first suit in August 1978. He escaped in May 1979. Alleged deprivations of constitutional rights occurring between those two dates are therefore not included in my June 1980 dismissal with prejudice. However, the facts underlying any alleged deprivations in this nine month period are identical, and plaintiff is therefore similarly barred from bringing these claims by the doctrine of res judicata.

3. Under Pennsylvania law, the court may order that a petitioner be allowed to enter a work release program. 61 Pa.Con.Stat.Ann. § 2141.

4. The earlier six month escape also would have constituted a bar to injunctive relief had not the prison officials waived this as a defense by following without protest the state court's direction to return plaintiff to the work release program.

5. *See Winsett v. McGinnes*, 617 F.2d 996, 1007 (3d Cir. 1980); *cf. Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (constitutional right to "good-time credit").

every plaintiff so sentenced has a continuing right to work release, despite repeated escapes for prolonged periods of time. The federal courts have recognized that prison officials are given broad discretion, and will intervene only when the abuse of that discretion is arbitrary and severe. *Cf. United States ex rel. Williams v. Cuyler*, 447 F.Supp. 540, 542 (E.D.Pa.1977) (suit by a state prisoner under § 1983 to be put on home furlough). Therefore plaintiff has no right to monetary damages for the period following his second escape.

## III. *CONCLUSION*

For the reasons stated herein, plaintiff's claims for monetary damages both before and after his second escape will be dismissed.